UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ABBOTT,

        Plaintiff,

Case No. 14-cv-11778
Hon. Matthew F. Leitman

v.

FORD MOTOR COMPANY
SALARIED DISABILITY PLAN,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM ADMINISTRATIVE DECISION (ECF #23) AND DENYING PLAINTIFF'S MOTION TO DENY ADMINISTRATIVE DECISION (ECF #25)**

Plaintiff James Abbott ("Abbott") worked as an automobile analyst for Ford Motor Company ("Ford"). While employed at Ford, Abbott participated in the Ford Motor Company Salaried Disability Plan (the "Plan"). After experiencing symptoms of depression, Abbott applied for and was granted disability benefits under the Plan. For the reasons described below, the Plan later reduced the amount of Abbott's disability benefits. Abbott subsequently filed an administrative appeal challenging the reduction of his disability benefits. The entity designated by the Plan to review such appeals – the Salaried Disability Appeals Committee (the "Appeals Committee") – affirmed the reduction.

1

Abbott then filed this action in which he challenges the reduction of his disability benefits. (*See* ECF #1.) The parties have now filed cross-motions for judgment on the administrative record. Abbott asks the Court to "deny" the administrative decision that affirmed the reduction of his benefits ("Abbott's Motion") (*see* ECF #25); the Plan asks the Court to "affirm" that decision ("the Plan's Motion") (*see* ECF #23). The Court **GRANTS** the Plan's Motion and **DENIES** Abbott's Motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Ford Makes Disability Benefits Available to Eligible Employees

Ford is an automobile manufacturer. It offers disability benefits to eligible employees through the Plan. (*See* the Plan, ECF #22-2 at 3-26, Pg. ID 68-91.)

Certain factors affect the amount of disability benefits a Plan participant is eligible to receive. For example, if a participant is eligible to receive income or benefits from other specified "income sources," the amount of the participant's disability benefits may be reduced. (The Plan at § 5.05, ECF #22-2 at 16, Pg. ID 81.) These "income sources" include Social Security benefits and retirement benefits that a participant is eligible to receive. (*Id.* at § 5.05(iii), ECF #22-2 at 16, Pg. ID 81.) Thus, if a Plan participant is entitled to receive retirement benefits or Social Security benefits, his disability benefits may be reduced by the amount of those other benefits that he is eligible to receive. (*See id.*)

The Plan further explains how a participant's possible eligibility for retirement benefits affects the calculation of the amount of disability benefits he receives. (*See id.* at § 3(viii), ECF #22-2 at 10, Pg. ID 75.)  Specifically, participants are told that starting on the "first day of the thirteenth month of Disability," the Plan will "presume" that a participant is entitled to receive retirement benefits. (*Id.*)  At that time, the Plan may reduce a participant's disability benefits by the amount of retirement benefits the participant is presumed eligible to receive.  A participant can overcome this presumption – and thus avoid a reduction of his disability benefits – only if the participant "provides proof that an application for [retirement] benefits was made and denied." (*Id.*)  Thus, unless a participant applies for, and is denied, retirement benefits, the Plan will reduce the participant's disability benefits payments by the amount of retirement benefits that the participant is presumptively entitled to receive.

**B.     Abbott Applies For and Receives Disability Benefits, and the Plan Instructs Abbott to Apply for Social Security and Retirement Benefits**

Abbott began working for Ford in 1977. (*See* ECF #22-5 at 82, Pg. ID 374.)  While employed by Ford, Abbott was a participant in the Plan.

On November 8, 2004, Abbott applied for disability benefits under the Plan. (*See* ECF #22-5 at 82, Pg. ID 374.)  UniCare, the Plan's claims processor, denied Abbott's application on January 5, 2005. (*See* ECF #22-7 at 56, Pg. ID 478.)  Abbott appealed the denial to the Appeals Committee.

3

On February 7, 2006, Suzanne De Haan ("De Haan"), on behalf of the Appeals Committee, sent a letter to Abbott's then counsel (with a copy to Abbott) concerning the results of Abbott's appeal. (*See* ECF #22-5 at 73-74, Pg. ID 365-66.) De Haan first informed Abbott's counsel that the Appeals Committee had overturned UniCare's previous decision denying Abbott disability benefits. (*See id.* at 73, Pg. ID 365.) De Haan then told Abbott's counsel that in order to avoid a reduction in Abbott's benefits, Abbott needed to provide UniCare with proof that he applied for and was denied (1) Social Security benefits and (2) retirement benefits. (*See id.* at 73-74, Pg. ID 365-66.) De Haan explained that if Abbott did not supply such proof to UniCare, then as of March 1, 2006, the Plan would presume that Abbott was eligible to receive both Social Security and retirement benefits, and it would reduce his disability benefits by the presumed amounts of those other benefits. (*See id.*)

**D.    Abbott Applies for Social Security Benefits and Retirement Benefits, But He Withdraws His Application for Retirement Benefits**

In response to De Haan's letter, Abbott applied for retirement benefits from Ford on February 28, 2006. (*See id.* at 58, Pg. ID 350.) At or around this same time, Abbott also applied for Social Security benefits. (*See id.* at 29-34, Pg. ID 321-26.) While Abbott successfully completed the process for obtaining Social

4

Security benefits[1] (*see id.*), he withdrew his application for retirement benefits before Ford could make a decision with respect to what amount of retirement benefits, if any, Abbott was entitled to receive. (*See id.* at 57, Pg. ID 349; *see also* ECF #22-4 at 62, Pg. ID 287.)

**E.   The Plan Reduces Abbott's Disability Benefits Based on His Presumed Retirement Benefits, and Abbott Files an Administrative Appeal Challenging That Reduction**

Abbott never provided UniCare with proof that he applied for and was denied retirement benefits. (Abbott could not provide such proof because, as noted above, he had withdrawn his application for retirement benefits.)  As a result, starting on March 1, 2006, UniCare presumed that Abbott was eligible to receive $1,379.54 per month in retirement benefits, and it reduced Abbott's monthly disability payment by that amount. (*See* ECF #22-7 at 56, Pg. ID 478; *see also* ECF #22-6 at 2-11, Pg. ID 376-85.)

On January 4, 2011, Abbott filed a "first-level appeal" under the Plan challenging the reduction of his disability benefits. (*See* ECF #22-2 at 28, Pg. ID 93.)  UniCare denied that appeal on January 6, 2011. (*See id.* at 29, Pg. ID 94.)

---

[1] After Abbott applied for Social Security benefits, he requested a hearing on his application before an Administrative Law Judge. (*See* ECF #22-5 at 32, Pg. ID 324.)  On November 19, 2008, the assigned Administrative Law Judge concluded that Abbott was disabled and was entitled to Social Security benefits. (*See id.*)  The Plan then offset the amount of Social Security benefits Abbott began receiving ($1,939.00) against the amount of his disability benefits. (*See* ECF #22-7 at 56, Pg. ID 478.)  Abbott has not challenged that reduction of his disability benefits.

5

UniCare explained that Abbott's disability benefits were properly reduced because, pursuant to Section 3(viii) of the Plan, (1) it was presumed that Abbott was eligible for retirement benefits and (2) Abbott's disability benefits were decreased by the amount of retirement benefits Abbott was entitled to receive. (*See id.*)  Unicare further told Abbott that he could file a "second level appeal" with the Appeals Committee. (*See id.*)  Abbott declined to do so.[2]

On May 2, 2014, Abbott filed this action against the Plan and UniCare challenging the reduction of his disability benefits.[3] (*See* Compl., ECF #1.)  In June 2015, the parties jointly moved to stay this action so that Abbott could pursue a "second-level appeal" with the Appeals Committee. (*See* ECF #18.)  The Court entered a stay on June 12, 2015. (*See* ECF #19.)

Abbott filed his "second-level appeal" on July 16, 2015. (*See* ECF #22-5 at 3-7, Pg. ID 295-99.)  In that appeal, Abbott argued that UniCare should not have reduced his disability benefits based upon his failure to apply for retirement benefits. (*Id.* at 7, Pg. ID 299.).  Abbott told the Committee that he "did not apply for his [retirement benefits]…because he lacked decision making skills." (*Id.* at 6, Pg. ID 298.)  Abbott said that due to his depression, he had "been in a mental fog,"

---

[2] While Abbott did not file a "second-level appeal" at that time, he did file a second "first-level appeal" on July 18, 2013, raising the same issues he did in his January 4, 2011, appeal. (*See* ECF #22-3 at 56, Pg. ID 201.)  UniCare responded that it had previously "addressed" the basis for his appeal (i.e., by rejecting the same claim in 2011.) (*See id.* at 58, Pg. ID 203.)

[3] The Court has since dismissed Abbott's claims against UniCare. (*See* ECF #14.)

6

was "incapable of understanding the terms of the Plan," and thus was "incapable of applying for his [retirement benefits] in a timely fashion." (*Id.*) He asked the Appeals Committee to excuse his failure to apply for retirement benefits and to reinstate the full amount of his disability benefits. (*Id.* at 7, Pg. ID 299.)

The Appeals Committee denied Abbott's "second-level appeal" on September 1, 2015. (*See* ECF #22-7 at 56-58, Pg. ID 478-80.) The Appeals Committee noted that Abbott *did*, in fact, "submit[] a retirement application" but that he later "withdrew his application" before a decision could be reached on the application. (*Id.* at 60-62, Pg. ID 482-84.) Thus, the Appeals Committee concluded that Abbott was not entitled to a restoration of the full amount of his disability benefits based on his argument that he was unable to apply for retirement benefits. (*Id.*)

Following the denial of Abbott's "second-level appeal," the parties returned to this Court. Abbott asks the Court to reverse the reduction of his benefits. (*See* Abbot's Motion, ECF #25.) The Plan requests that the Court affirm the reduction. (*See* the Plan's Motion, ECF #23.) Pursuant to Local Rule 7.1(f)(2), the Court concludes that oral argument is not necessary and would not aid its decision on the motions.

## **GOVERNING LEGAL STANDARD**

Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), authorizes an individual to bring a civil action "to recover benefits due to him under the terms of [his] plan, to enforce [his] rights under the terms of the plan, or to clarify [his] rights to future benefits under the terms of the plan." Where, as here, a plan administrator has discretionary authority to determine eligibility for benefits or to construe the terms of a plan (*see* the Plan at §§ 7-8, ECF #22-2 at 20-21, Pg. ID 85-86), the Court reviews the administrator's action under the "arbitrary and capricious" standard of review.[4] *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

"The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks and citations omitted). At the same time, a district court reviewing a plan administrator's determination under the arbitrary-

---

[4] Both parties concur that the "arbitrary and capricious" standard governs the Court's review in this case. (*See* the Plan's Mot. at 10-12, Pg. ID 500-02; Abbott's Mot. at 5, Pg. ID 514.)

8

and-capricious standard does not sit merely to "rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004). Abbott has the burden of demonstrating that the administrator acted arbitrarily or with caprice. *See Senzarin v. Abbott Severance Pay Plan for Emp. of KOS Pharm.*, 361 Fed. App'x 636 (6th Cir. 2010) (citing *Rochow v. Life Ins. Co. of North Am.*, 482 F.3d 860, 865 (6th Cir. 2007)).

## ANALYSIS

The decision by the Appeals Committee was neither arbitrary nor capricious. It was a straightforward and reasonable application of the plain language of the Plan. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (Under applicable provisions of ERISA, "the terms of the Plan" control whether participant is entitled to benefits (quoting 29 U.S.C. § 1132(a)(1)(B))).

The Plan provides that (1) disability benefits may be reduced by the amount of retirement benefits a participant is eligible to receive, and (2) it is presumed that a participant is eligible to receive retirement benefits unless he proves otherwise by applying for, and being denied, such benefits. It is undisputed that Abbott did not present to the Appeals Committee proof that he had applied for, and been denied, retirement benefits. Thus, the Appeals Committee had every right under the Plan to uphold (1) the presumption that Abbott was eligible for retirement benefits, and

9

(2) the reduction to Abbott's disability benefits by the amount of retirement benefits to which he was presumptively entitled.

Abbott resists this conclusion. He argues that the Appeals Committee should have excused his withdrawal of his application for retirement benefits because he was suffering from a serious mental illness at the time of the withdrawal. (*See* Abbott's Mot. at 6, Pg. ID 515.) In support of this argument, Abbott relies upon cases in which courts have excused late disability filings or tolled statutes of limitations on the basis that the claimant suffered from a mental illness. (*See id.*) Abbott's argument fails for two reasons.

First, Abbott never asked the Appeals Committee to excuse the *withdrawal* of his application for retirement benefits on the basis that he suffered from a mental illness. Instead, Abbott asked the Appeals Committee excuse his failure to *apply* for retirement benefits in the first place. (*See* ECF #22-5 at 6-7, Pg. ID 298-99.) Since Abbott never asked the Appeals Committee to excuse his withdrawal of his application for retirement benefits, he cannot now claim that the Appeals Committee erred when it failed to grant him relief on that basis.

Moreover, the Appeals Committee properly rejected the argument that Abbott did present in his appeal – i.e., that his failure to apply for retirement benefits in the first instance should be excused. As the Appeals Committee properly noted, Abbott unquestionably *did* apply for retirement benefits, and then

10

withdrew his application less than two weeks later. (*See* ECF #22-5 at 57-58, Pg. ID 349-50.) Thus, the Appeals Committee correctly concluded that Abbott's claim for relief rested on a faulty premise.

Second, the case law that Abbott relies upon is inapposite. Each of the cases Abbott has cited – *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506 (2d Cir. 2002), *Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575 (D.C. Cir. 1998), and *Stoll v. Runyon*, 165 F.3d 1238 (9th Cir. 1999) – addressed whether a plaintiff's failure to take an affirmative action by a specified deadline should be excused due to a mental illness. Here, in sharp contrast, Abbott, while represented by counsel, *did* timely file his application for retirement benefits. But he later withdrew his application. Moreover, during the same timeframe that Abbott withdrew his application for retirement benefits, he was able to apply for Social Security benefits, request a hearing on that application before an Administrative Law Judge, and appear at that hearing. The cases Abbott cites simply do not address the circumstances that exist here.

## CONCLUSION

For the reasons stated above, the Appeals Committee did not act arbitrarily or capriciously when it affirmed the reduction of Abbott's disability benefits. Accordingly, **IT IS HEREBY ORDERED** that the Plan's Motion (ECF #23) is **GRANTED**, and Abbott's Motion (ECF #25) is **DENIED**.

                                        s/Matthew F. Leitman
                                        MATTHEW F. LEITMAN
                                        UNITED STATES DISTRICT JUDGE

Dated: March 22, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 22, 2016, by electronic means and/or ordinary mail.

                                        s/Holly A. Monda
                                        Case Manager
                                        (313) 234-5113